UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| DAVID GUETIG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 4:08-cv-066-SEB-WGH |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY DISCUSSING COMPLAINT FOR JUDICIAL REVIEW**

David Guetig ("Guetig") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further consideration.**

**I. BACKGROUND**

Guetig filed applications for SSI and DIB on April 10, 2006, and May 10, 2006, respectively, alleging an onset date of disability of November 1, 2001. His applications were denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted and a hearing was conducted in Louisville, Kentucky on June 27, 2007. Guetig appeared, accompanied by his non-attorney representative. Medical and other records were introduced into evidence. Geutig and a vocational expert testified at the hearing. The ALJ issued a decision on October 25, 2007, denying benefits. On April 1, 2008, the Appeals Council denied Guetig's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Guetig met the insured status requirements of the Act through March 31, 2008; (2) Guetig had not engaged in substantial gainful activity since November 1, 2001, the alleged onset date; (3) Guetig had severe impairments consisting of bipolar disorder and depressive disorder; (4) Guetig did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Guetig had the residual functional capacity ("RFC") to perform light work, and was further limited to low stress work and simple tasks which did not require interaction with the public and only minimal interaction with coworkers; (6) Guetig was unable to perform any past relevant work; (7) Guetig was born on September 17, 1960 and was 42-years old, which is defined as a younger individual age 18-49, on the alleged disability onset date, had at least a high school education and was able to communicate in English; (8) transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework, Guetig was "not disabled" whether or not he had transferable job skills; and (9) considering Guetig's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Guetig had not been under a "disability" as defined in the Act from November 1, 2001, through the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for DIB and SSI, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id*. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

In this case, the ALJ determined that Guetig had severe impairments consisting of bipolar disorder and depressive disorder, but he could perform a significant number of jobs in the national economy. Guetig argues that the ALJ's decision is not supported by substantial evidence. Specifically, Guetig contends that 1) he met Listing 12.03 (schizophrenic, paranoid and other psychotic disorders) and/or Listing 12.04 (affective disorders); 2) the ALJ committed reversible error by not obtaining the services of a medical advisor; 3) the ALJ's RFC is not supported by substantial evidence; 4) Guetig would need to take too many unscheduled breaks to perform light work; 5) the ALJ failed to properly weigh the medical opinions found in the LifeSpring, WINGS, and Kentucky State Reformatory Outpatient Psychiatric Service ("KSROPS") records; and 6) the ALJ's credibility determination was not supported by substantial evidence.

Most of Guetig's arguments have a common theme. The last time a mental health expert reviewed the mental health evidence was when State Agency physician Dr. Pressner reviewed the record in August 2006.  (R. at 233-249). The hearing was held on June 27, 2007. Guetig correctly points out that a substantial portion of the mental health records were submitted *after* the State Agency reviews were conducted and were not subsequently reviewed by a medical source.

Guetig argues that the ALJ failed to discuss the weight given to the mental health records, including those from LifeSpring, WINGS, and KSROPS.  Guetig contends that the LifeSpring records support his complaints about fatigue and problems sleeping and that the WINGS records reflect his symptoms of depression, fatigue, tremors and imbalance. The Commissioner responds that Guetig should have specified what medical opinion Guetig wanted to have addressed. Perhaps the Commissioner is saying that absent more specificity, this claim may amount to harmless error.  The court, however, is persuaded that the ALJ's decision is striking in its lack of discussion of the treatment records of Guetig's primary impairments, bipolar disorder and depression. The Commissioner's argument that Guetig was responsible for failing to submit many of the mental health records in a more timely manner has no bearing on the fact that the ALJ had these records on or before the date of the hearing and yet gave very little indication of the weight accorded thereto.

3

Although the ALJ need not discuss every piece of evidence, he may not "select and discuss only that evidence that favors his ultimate conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In this case the ALJ selected portions of the record to conclude that Guetig's symptoms were not as severe as the complete record indicates. The court "require[s] an explanation of why strong evidence favorable to the plaintiff is overcome by the evidence on which an ALJ relies." *Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007).

Guetig also argues that the ALJ's credibility determination is not supported by substantial evidence. The ALJ recited Guetig's testimony that he had been incarcerated from 2003 until 2006, he had a history of severe depression and bipolar disorder, he had argued with coworkers while working, and that he had experienced mood swings and still experienced hallucinations, some at work. (R. at 25). The ALJ acknowledged Guetig's reports that he had to leave work due to altercations with his supervisor and that Guetig's medications and depression caused drowsiness and fatigue. *Id.* The ALJ noted that Guetig had experienced low energy, depression, hallucinations, anhedonia, and decreased concentration, he had a history of suicide attempts, he had problems getting along with others, and had been assigned GAF scores of 50 in the past. *Id.*

The ALJ concluded, however, that Guetig's allegations "were not fully supported by the evidence of record." *Id.* In support of this conclusion, the ALJ stated that the consultant examiner assigned a GAF of 55 to 60, representing no more than moderate symptoms. *Id.* The ALJ further stated that Guetig had "described daily activities which are not limited to the extent one would expect, given his complaints of disabling symptoms and limitations." *Id.* The daily activities noted by the ALJ were Guetig's ability to perform some chores around the house and to paint. The ALJ also noted that Guetig's part-time work activity indicated that Guetig's daily activities "have, at least at times, been somewhat greater than the claimant has generally reported." *Id.* The Seventh Circuit has warned that reliance on a claimant's minimal daily activities does not form an adequate basis to discredit his allegations of disability. *See Carradine v. Barnhart,* 360 F.3d 751, 755 (7th Cir. 2004) (ALJ "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week"); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Even if "some chores," some painting and a period in which Guetig unsuccessfully tried to work part-time are considered, such activities did not require sustained energy, activity or strength so as to support a finding that Guetig was capable of working on a full-time basis.

The ALJ appears to have determined that Guetig's allegation that he was disabled was not credible, but the ALJ did not otherwise specify what statements were not credible and why. The ALJ did not state that Guetig's history of severe depression and bipolar disorder or his reports of arguments with coworkers and supervisors, mood swings, decreased concentration, fatigue and hallucinations were not credible. Indeed, neither the GAF score nor Guetig's ability to do some chores and paint nor even work part-time are inconsistent with such testimony.

4

Guetig argues that the ALJ also failed to wrestle with Guetig's reports of hallucinations, fatigue and medication side effects. The Commissioner argues that Guetig's hallucinations had decreased significantly since he was released from prison. The ALJ, however, did not arrive at this conclusion, and the Commissioner's *post hoc* characterization is not helpful under the circumstances. *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) ("general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ"). Indeed, the ALJ acknowledged that Guetig testified at the hearing that he was still experiencing hallucinations and that he had experienced hallucinations while at work. (R. at 25).

In relation to Guetig's fatigue, the ALJ stated that he took that into account by limiting Guetig to light work. (R. at 25). "Light work" is characterized as lifting a maximum of twenty pounds occasionally, with frequent lifting or carrying of up to ten pounds, standing or walking off and on for a total of six hours during an eight-hour workday, intermittent sitting, and using hands and arms for grasping, holding and turning objects. *Clifford v. Apfel*, 227 F.3d 863, 869 n.2 (7th Cir. 2000) (citing 20 C.F.R. § 404.1567(b) and Social Security Ruling 83-10). There is no evidence of record that supports the ALJ's assumption that by limiting Guetig to light work, the symptoms of feeling tired and having trouble keeping his eyes open, (R. at 59), would be adequately accommodated.

The ALJ further stated that "although the claimant has alleged an emotional impairment, he was able to relate well to the ALJ and to his representative at the hearing," and that Guetig "answered the questions asked of him quickly and appropriately without any evidence of memory or concentration problems." (R. at 25). "There was no obvious evidence of any significantly limiting mental or emotional problem demonstrated during the course of the hearing." *Id.* Even assuming the ALJ's observation was accurate, that does not compel a finding that a significant mental or emotional impairment did not exist. The record is consistent in its reflection of Guetig experiencing hallucinations, depression, mood swings, fatigue, problems with coworkers, and having a history of suicide attempts. Any inference that Guetig's emotional impairment was insignificant drawn solely as a result of the observation of Guetig's responses and behavior during the hearing is not supported by substantial evidence. For each of the above reasons, the court finds that the ALJ failed to build an accurate and logical bridge between the evidence and his credibility determination. *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006)*; Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir.2003).

In sum, the court cannot be confident that the ALJ considered the important evidence of record, nor can it trace the path of the ALJ's reasoning in evaluating Guetig's ability to perform work activities on a regular and continuing basis. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (an "ALJ must sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning") (internal quotation omitted)).

## III. CONCLUSION

For the reasons discussed in this Entry, the ALJ's conclusions are not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**


Date: 06/11/2009

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana